# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# TERRE HAUTE DIVISION

| | |
|---|---|
| DANIEL L. BROWN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) CAUSE NO. 2:13-cv-425-WTL-DKL ) |
| PRESSTIME GRAPHICS, INC., et al., | ) ) |
| Defendants. | ) |

## ENTRY ON MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR NEW TRIAL

This cause is before the Court on the Defendants' Partial Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial (Dkt. No. 144). The motion, which is brought pursuant to Federal Rules of Civil Procedure 50(b) and 59(a), is fully briefed and the Court, being duly advised, **DENIES** the motion for the reasons set forth below.

In their renewed motion for judgment as a matter of law, the Defendants argue that all but $1,989.50 of the $166,545.76 awarded to the Plaintiff in this case under the Fair Labor Standards Act is not supported by the evidence at trial.[1] In considering the motion, the Court must "construe the trial evidence strictly in favor of the party who prevailed before the jury" and determine "whether a reasonable jury would have a legally sufficient evidentiary basis to find for the party on that issue." *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 822 (7th Cir. 2016) (citations omitted). In the alternative, the Defendants argue that they are entitled to a new trial pursuant to Rule 59(a), pursuant to which "[a] new trial is appropriate

---

[1] The Defendants also do not dispute the $4,800.00 awarded to the Plaintiff under the Indiana Wage Payment Statute.

if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014).

The Defendants' argument is based solely on their assertion that "[t]he evidence adduced at trial showed that Presstime, Osler Institute and Selliken did not know and had no reason to know that Brown was working overtime for which he was not being compensated." Dkt. No. 144. As the Defendants recognize:

> The FLSA imposes an obligation on the employer "to exercise its control and see that the work is not performed if it does not want it to be performed." *See* 29 C.F.R. § 785.13. The employer "cannot sit back and accept the benefits without compensating for them." *Id.* "[The employer's] duty arises even where the employer has not requested the overtime be performed or does not desire the employee to work, or where the employee fails to report his overtime hours." *Chao v. Gotham Registry, Inc.,* 514 F.3d 280, 288 (2d Cir. 2008). The mere promulgation of a rule against overtime work is not enough. 29 C.F.R. § 785.13. Nor does the fact that the employee performed the work voluntarily necessarily take her claim outside of the FLSA. 29 C.F.R. § 785.11.
>
> However, the FLSA stops short of requiring the employer to pay for work it did not know about, and had no reason to know about. *See* 29 U.S.C. § 203(g) ("'Employ' includes to suffer or permit to work."); *Reich [v. Dept. of Conserv. & Nat. Resources,* 28 F.3d [1076, 1082 (11th Cir. 1994)] ("[A]n employer's knowledge is measured in accordance with his duty . . . to inquire into the conditions prevailing in his business. . . . [A] court need only inquire whether . . . [the employer] had the opportunity through reasonable diligence to acquire knowledge." (internal quotation marks and citations omitted)); 29 C.F.R. § 785.11 ("The employer knows or has reason to believe that he is continuing to work.").

*Kellar v. Summit Seating Inc.*, 664 F.3d 169, 177 (7th Cir. 2011).

There was ample evidence at trial to support a finding that the Defendants knew or had reason to know that the Plaintiff was working overtime on a regular basis. The evidence at trial established that part of the Plaintiff's duties from the outset of his employment for the Defendants was to "clean up" the extensive grounds of a property the parties refer to as the "TDK Property." The TDK Property was an abandoned wastewater treatment plant that Defendant Selliken hoped to refurbish and return to operation. The Plaintiff testified that he was

2

told by Defendant Selliken to record 35 hours of work each week and to "bank" any additional time he worked, and that he would be compensated for the additional time when "the plant [the TDK Property] got operational and money started coming in." Dkt. No. 156-2 at 6. He testified that he later was instructed by Cory Bradbury, to whom he reported, to provide security at the TDK property on nights and weekends after some break-ins occurred there. The Plaintiff testified that he continued to record 35 hours each week on his time card and keep track of his additional hours separately, as he had been instructed to do by Selliken when he was hired. *Id.* at 12. He further testified that when he and Bradbury discussed how many hours they were working, Bradbury would tell him to "take it on the chin, and it'll all come back to us later." *Id.* at 15. This was corroborated by Bradbury, who testified that when he said that he meant: "[i]f you work really hard now and give up your time and dedicate it to the grounds over there, and if the licensing and the permitting and everything, perhaps one day this piece of property will start to turn a profit; and we can all enjoy a 40-hour work week where we can spend more time with our family and friends than we do either going to or, or from or actually working." Dkt. No. 156-3 at 35. This testimony supports a finding that the Plaintiff was working more than 40-hour work weeks at the time and that Bradbury, to whom the Plaintiff reported, knew of that fact.

Even if Bradbury's knowledge is not imputed to the Defendants,[2] his testimony supports the Plaintiff's overarching narrative that he was hired with the understanding that he would be

---

[2]The Defendants do not argue in their renewed motion that Bradbury's knowledge should not be imputed to the Defendants; in fact, they do not acknowledge Bradbury's testimony at all. The Defendants did make this argument in their oral motion at trial, stating:

> Telling Cory Bradbury gets them nowhere because Cory Bradbury is not employed by the Osler Institute. He's not employed by Presstime, and he's not personally employed by Dr. Selliken. He was involved in ABBA, which is not a defendant to this case. Yes, he knew a great deal about what was going on at TDK, but he's not a manager at either of these two companies.

paid for 35 hours a week with the hope that he would be compensated for his "banked" additional hours once the TDK Property became profitable. And although the Defendants make much of the fact that virtually all of the Plaintiff's relevant time cards reported that he worked 35 hours per week, Dr. Selliken's own testimony supports a finding that the Defendants knew or should have known that the Plaintiff's time records did not accurately reflect the hours he was working. *See generally* Dkt. No. 153 at 73-79 (testifying that he was aware that the Plaintiff performed security work at the TDK Property at night, that in fact he expected the Plaintiff to "vary[] his hours to make it hard for the copper bandits to establish a pattern that they would be free to access the property," and acknowledging that the Plaintiff's time cards nonetheless showed that every week he worked from 7:00 a.m. to 5:00 p.m. four days a week and 7:00 a.m. to noon one day a week). It was not unreasonable for the jury to conclude from this testimony and the other testimony cited by the Plaintiff in his response brief, *see* Plaintiff's Response, Dkt. No. 155 at 6-10 (citing to specific relevant evidence), that the Plaintiff routinely worked more than forty hours a week and that the Defendants knew, or through reasonable inquiry into the "conditions prevailing in their businesses," would have discovered, that to be the case. As the Defendants acknowledge, the law does not permit an employer to avoid paying overtime by remaining willfully ignorant of an employee's work hours.

For the reasons set forth above, the Defendants' motion for judgment as a matter of law or for a new trial (Dkt. N. 144) is **DENIED**. In light of this ruling, the Defendants' motion to

---

Dkt. No. 154 at 12. The Defendants have failed to develop this argument, however, and "[i]t is not this court's responsibility to research and construct the parties' arguments." *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011).

stay enforcement of the judgment pursuant to Federal Rule of Civil Procedure 62(b) (Dkt. No. 163) is **DENIED AS MOOT**. The remaining motions in this case will be addressed in due course.

SO ORDERED: 2/9/17

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification